171 So.2d 816 (1965)
Archie G. TAYLOR, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants-Appellees.
No. 1330.
Court of Appeal of Louisiana. Third Circuit.
February 10, 1965.
Rehearing Denied March 3, 1965.
Writ Granted April 15, 1965.
*817 Gist, Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellant.
Pharis & Pharis, by James Pharis, Jr., and Kelly Hamm, Alexandria, for plaintiff-appellee.
Before TATE, FRUGÉ and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a suit brought by an owner-passenger for personal injury and property damage arising out of a one car motor vehicel accident. Plaintiff, Archie Taylor, the owner of the 1957 Ford Ranchero involved in the accident, filed suit against his own liability insurer, Hartford Accident & Indemnity Company, and State Farm Mutual Automobile Insurance Company as automobile liability insurer of Garnie Taylor, whose son, Daniel Taylor, was driving plaintiff's Ford Ranchero pickup truck at the time of the accident. Daniel Taylor is plaintiff's nephew. Judgment was rendered against Hartford Accident & Indemnity Company in the sum of $5,000.00, and an additional judgment was rendered against State Farm Mutual Automobile Insurance Company in the sum of $5,234.15. Defendants have appealed.
The accident happened near Marksville, Louisiana, in the Parish of Avoyelles. Plaintiff and his nephew, Daniel Taylor, were riding in the pickup truck proceeding from Pineville, Louisiana, where plaintiff resided, to their place of employment at New Roads, Louisiana. Daniel Taylor was driving the pickup truck, and plaintiff, Archie Taylor, was asleep on the seat beside him. When about three miles west of Marksville, Louisiana, the driver, Daniel Taylor, went to sleep. The highway was at that point straight and therefore the pickup truck gradually drifted across the highway and onto the left shoulder of the road. Both the driver and plaintiff were then awakened and the accident occurred as they attempted to regain control over the vehicle.
Daniel Taylor was undoubtedly guilty of negligence in falling asleep. We believe the rule concerning the negligence of a sleeping automobile operator to be as stated in 1 Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 655:
"* * * In any ordinary case one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, and it lies within his own control to keep awake or to cease from driving, and so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case against him for injuries sustained by another while so driving, and sufficient for a recovery if no circumstances tending to excuse or justify his conduct are proven."
See also Levy v. Indemnity Insurance Co. *818 of North America, La.App. 2 Cir., 8 So.2d 774.
Defendants urge that plaintiff, Archie Taylor, should be barred from recovery because of contributory negligence. It is contended that plaintiff was guilty of independent contributory negligence in going to sleep after having placed the operation of the vehicle in the hands of his 19-year old nephew. Defendants argue that since plaintiff was himself sleepy, he knew or should have known that Daniel was also sleepy, having obtained less sleep that night than had plaintiff. Under such circumstances, defendants maintained that plaintiff should have stayed awake and supervised his nephew's driving.
The evidence shows that plaintiff and his nephew left plaintiff's home at 3:00 A.M. and drove to a nearby coffee shop for coffee. Before proceeding, Daniel asked plaintiff if he wanted him, Daniel, to drive. Plaintiff inquired if Daniel was sleepy. On receiving a negative answer from Daniel, plaintiff allowed him to take over the operation of the pickup truck. Apparently Daniel Taylor was in general an experienced and capable driver. We do not believe that under these circumstances plaintiff was negligent in going to sleep.
In the case of Gaspard v. Lemaire, 245 La. 239, 158 So.2d 149, our Supreme Court indicated that owner-passengers should, in suits against the driver for his negligence, be considered substantially the same as any other guest passenger. We believe it now to be the rule that when an owner-passenger places the operation of his vehicle in the hands of a competent driver, that he may rely on the driver to act in a prudent manner to the same extent as may any other guest passenger. We therefore hold that it was not incumbent on the plaintiff to remain awake and supervise his nephew's driving. Benson v. Metropolitan Casualty Insurance Co., La. App. 2 Cir., 79 So.2d 345. Accordingly, plaintiff is not barred from recovery because of contributory negligence or an assumption of risk on his part and may therefore recover under the Hartford policy.
We must next face the serious question of insurance coverage vel non under the State Farm policy issued to Daniel's father, Garnie Taylor. Defendants contend there is no coverage under the policy for the following reasons: (1) Daniel Taylor was not a resident of his father's household; (2) the Ford pickup truck was a non-owned automobile furnished to Daniel for his regular use, and/or (3) the pickup truck was a non-owned automobile used in Daniel's occupation.
Pertinent provisions of the State Farm policy provide:
"* * * the unqualified word `insured' includes (1) the named insured, and also includes (2) his relatives, * * *"
"Relative means a relative of the named insured who is a resident of the same household."
"Insuring Agreement II does not apply: (1) to a non-owned automobile * * (b) hired by or furnished to the named insured or a relative for regular use, or (c) while used in the business or occupation of such named insured or relative * * *."
First, it is necessary to determine if Daniel Taylor was at the time of the accident a resident of his father's household so as to be considered as an "insured" under the policy.
The facts show that Daniel Taylor was, at the time of the accident, an unemancipated 19-year old minor. At the request of his uncle, plaintiff herein, Daniel left his home in Camden, Arkansas, where he lived with his parents, to go to work with and for his uncle, Archie Taylor. He left Arkansas during July of 1962, soon after having graduated from high school. He stated that it was his intention on finishing high school to get a job and earn *819 his own livelihood. Daniel stayed with his uncle, Archie Taylor, on a share-the-expense basis. All indications are that Daniel intended to stay with his uncle Archie for an indefinite length of time.
We are of the opinion that the trial court correctly held that Daniel was nevertheless a resident of his father's household. In the case of Watkins v. Cupit, La.App. 1 Cir., 130 So.2d 720, an injured party sued the father, a resident of Mississippi, for the tortious conduct of his son, who was living and working in Baton Rouge, Louisiana, where he was involved in an automobile accident. In interpreting LSA-Civil Code Article 2318, which provides for paternal responsibility for the torts of a minor residing with his father, the court held that "residing" within the meaning of that article was synonymous with "domiciled". The court concluded that, even though the minor was actually living and working in Louisiana and away from the father's residence in Mississippi, nevertheless, in Louisiana, "As a matter of law, the residence of an unemancipated minor is that of his father unless changed in some manner prescribed by law." 130 So.2d 723. The father was therefore held responsible for his unemancipated son's tortious act. Although no insurance policy was interpreted in that case, we feel the same reasoning is applicable. We therefore hold that Daniel Taylor was an insured within the language of the State Farm policy.
We next consider the exclusionary clause concerning vehicles furnished for the regular use of the insured. We find that the Ford pickup was not furnished for Daniel Taylor's regular use. The purpose of this clause is to exclude from coverage non-owned automobiles over which the insured has a general authority of use. Lincombe v. State Farm Mutual Ins. Co., La.App. 3 Cir., 166 So.2d 920. The only evidence in the record pertaining to Daniel's use of the pickup truck shows that he used the truck on the job to run errands. He occasionally operated the pickup truck for personal use but only when specifically authorized to do so by his uncle. At no time does it appear that he was given any general authorization to use the vehicle.
The policy excludes coverage of non-owned automobiles "while used in the business or occupation of such named insured or relative." The accident occurred while plaintiff and Daniel were driving to their place of employment. Daniel Taylor was paid no wages for his travel time. It is our holding that the pickup truck was not being used in the business or occupation of the insured, Daniel Taylor, at the time the accident occurred.
Defendant relies on the case of Jagneaux v. American Automobile Ins. Co., La.App. 3 Cir., 136 So.2d 91, where we held that an employee being transported home by his employer in a vehicle furnished by the employer and driven by a co-employee was injured in the course of his employment by an automobile being used "in the business of such employer" within the meaning of an exclusionary clause to that effect. That interpretation resulted in view of the liberal construction given the term "in the course and scope of employment" under our workmen's compensation laws. The general rule is that an employee en route to his place of employment is not within the scope of his employment. Wills v. Correge, La.App. 4 Cir., 148 So.2d 822. We believe that rule is applicable to this case. Therefore, we find that Daniel Taylor at the time of the accident was not driving the vehicle during the course of his business or occupation. Accordingly, we hold that liability exists under the State Farm policy.

Quantum
After the accident plaintiff was taken to the hospital, where X-ray examinations revealed a compression fracture of the fourth lumbar vertebra. Later, X-rays established that plaintiff had also received a compression fracture to the second lumbar vertebra. Plaintiff remained in the hospital *820 from September 13 to September 18. While there he developed a painful ileus. Before being released from the hospital he was fitted with a Jewett brace, which he wore for three months. During this three month period he suffered some degree of pain due to the development of tendonitis in his shoulder.
Dr. Paul M. Davis, orthopedic specialist and plaintiff's treating physician, testified that although the fractured vertebrae had healed well, in his opinion plaintiff would have a permanent body impairment to the extent of about 12%. He based this estimation on the fact that since the accident plaintiff has, as a result of his injury, developed a very poor posture, weakness of the trunk muscles and will suffer substantial pain in doing strenuous work.
Plaintiff, Archie Taylor, age 46, testified that he returned to his work as operator of heavy earth moving machinery after only ten days from the time of the accident. He was at that time working with a brace on his back and endured much pain. It was necessary to re-arrange some of the mechanisms on the dragline so that he could operate it from a sitting-standing position.
At the time of the trial of this case plaintiff was working as a roustabout foreman. He testified that because of his injury he could not do the heavy work done by a roustabout, though such work was usually a part of a roustabout foreman's duties.
It is apparent from the reasons for judgment, although not specifically stated, that of the total award received by plaintiff of $10,234.15, $9,000 was allowed for his personal injuries. Plaintiff's medical expenses were $784.15 and damage to his pickup truck was stipulated at $350.00.
Referring again to the case of Gaspard v. Lemaire, 245 La. 239, 158 So.2d 149, it is seen that the injuries involved in that case were quite similar to those suffered by Archie Taylor. The Supreme Court affirmed an award of $19,500.00 in the Gaspard case. However, it is noteworthy that on first hearing of the case the court, after reviewing similar cases, awarded $8,500.00. We are therefore of the opinion that the $9,000.00 awarded by the trial judge in the instant case was well within the permissible range of discretion.
For the reasons set forth in this opinion, the judgment of the district court is affirmed. Cost of this appeal shall be borne by defendants in the same proportion in which they are cast in judgment.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.