818 So.2d 118 (2001)
Janice S. O'NEAL
v.
James H. BLACKWELL, Mrs. Blackwell, Joshua James Blackwell, Louisiana Farm Bureau Casualty Insurance Company and XYZ Insurance Company
No. 2000 CA 2014.
Court of Appeal of Louisiana, First Circuit.
November 14, 2001.
*119 Dean M. Esposito, Baton Rouge, for Plaintiff-Appellant Janice S. O'Neal.
Paul Marks, Jr., Baton Rouge, for Defendants-Appellees James H. Blackwell, Mrs. Blackwell, and Louisiana Farm Bureau Casualty Insurance Company.
Kirk A. Patrick, III, Baton Rouge, for Defendant-Appellee Southern Farm Bureau Casualty Insurance Company.
Before: FOIL and PETTIGREW, JJ., and KLINE,[1] J. Pro Tem.
PETTIGREW, J.
In this case, plaintiff filed suit seeking to recover damages for injuries she sustained in an automobile accident. The trial court granted summary judgment in favor of Southern Farm Bureau Casualty Insurance Company, and plaintiff has appealed. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On October 3, 1997, plaintiff, Janice S. O'Neal, was operating her 1994 Dodge pickup truck on Ellis Avenue, in East Baton Rouge Parish, Louisiana, when she was struck by a 1986 Toyota pickup truck driven by Joshua James Blackwell (erroneously referred to as James Joshua Blackwell in the petition for damages) and owned by James H. Blackwell. Joshua was backing from a private driveway onto Ellis Avenue when he collided with Ms. O'Neal's vehicle.
As a result of the injuries she sustained in the accident, Ms. O'Neal filed the instant suit for damages. Because Joshua was a minor, his parents, James H. Blackwell and Jan Blackwell, were named as defendants. Further, Louisiana Farm Bureau Casualty Insurance Company, as Mr. *120 Blackwell's insurer, and Southern Farm Bureau Casualty Insurance Company, as Mrs. Blackwell's insurer, were named as defendants. The defendants all filed answers, generally denying the allegations of Ms. O'Neal's petition.
Thereafter, Southern Farm Bureau filed a motion for summary judgment alleging that the policy issued to Mrs. Blackwell excluded coverage for the injuries suffered by Ms. O'Neal. Southern Farm Bureau alleged that because the vehicle Joshua was operating was furnished for his regular use and he was a member of Mrs. Blackwell's household, its policy did not provide coverage and summary judgment was warranted.
The hearing on Southern Farm Bureau's motion was conducted on April 3, 2000, at which time the court ruled in favor of Southern Farm Bureau and dismissed Ms. O'Neal's claims against Southern Farm Bureau. A judgment in accordance with the court's findings was signed on April 19, 2000. It is from this judgment that Ms. O'Neal has appealed, assigning error to the court's decision to grant summary judgment in favor of Southern Farm Bureau on the coverage issue.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a fullscale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966 B. Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La.Code Civ. P. art. 966 A(2).
The initial burden of proof remains with the mover and is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." See Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. Code Civ. P. arts. 966 and 967.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La. App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Frost v. David, 95-0839, p. 4 (La.App. 1 Cir. 5/10/96), 673 So.2d 340, 343. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the *121 evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1183.

DISCUSSION
Although the record does not contain any opposition by Ms. O'Neal to Southern Farm Bureau's motion for summary judgment, there was documentary evidence introduced at the hearing on April 3, 2001. This evidence consists of the certificate of title and certificate of registration for the 1986 Toyota pickup truck. According to the truck's title and registration, it was acquired by Mr. Blackwell on January 10, 1997, and is registered solely in his name. Also introduced into evidence were the depositions of Mr. Blackwell and Joshua. Thus, in addition to the insurance policy in question,[2] we will also review this documentary evidence to determine whether the policy issued to Mrs. Blackwell by Southern Farm Bureau excluded coverage for the injuries sustained by Ms. O'Neal.
Under the insuring agreement in question, Southern Farm Bureau agrees "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages." "Insured" is defined in the policy as "the named insured and any resident of the same household." However, the following exclusion is found in a section entitled "USE OF OTHER AUTOMOBILES":
(d) This insuring agreement does not apply:
(1) to any automobile owned by or furnished for regular use to either the named insured or a member of the same household[.]
Thus, there are two central questions for us to answer: (1) was Joshua a resident or member of the same household as his mother; and (2) was the 1986 Toyota pickup truck furnished for Joshua's regular use.
The first question to be decided is whether Joshua was a resident or member of the same household as his mother, the named insured in the Southern Farm Bureau policy. The courts have held that whether a person is or is not a resident of a household is a question of law as well as a question of fact that is to be determined from the facts of each case. Miley v. Louisiana Farm Bureau Casualty Insurance Company, 599 So.2d 791, 798 (La. App. 1 Cir.), writ denied, 604 So.2d 1313 *122 (La.1992). Additionally, the Louisiana Supreme Court has held that because the term "resident of the same household" has no absolute or precise meaning, any doubt as to the extent or fact of coverage under this term will be understood in its most inclusive sense. Bond v. Commercial Union Assurance Co., 407 So.2d 401, 407-08 (La.1981)(on rehearing).
At the time of their divorce in 1989, James and Jan Blackwell were awarded joint custody of their three minor children, with Jan designated as the domiciliary parent. All of the children resided with Mrs. Blackwell following the divorce. In 1995, Joshua moved in with his father in Covington due to problems he was having at the high school he was attending in Baton Rouge. Joshua transferred to Covington High School, but only remained there until 1997, when he transferred to Tara High School in Baton Rouge. At the time of this accident on October 3, 1997, Joshua was attending Tara High School. He lived with his mother in Baton Rouge during the school week and would return to Covington on the weekends to live with his father.
Applying the above precepts to the facts of this case, we find there was ample evidence in the record to support a finding that Joshua was a resident or member of his mother's household at the time of the accident in question. Thus, we must now determine whether the 1986 Toyota pickup truck was furnished for Joshua's regular use.
Ms. O'Neal argues in brief that the 1986 Toyota pickup truck was not furnished to Joshua for his regular use. In support of her position, Ms. O'Neal cites Moreau v. Keller, 144 So.2d 281 (La.App. 4 Cir.1962); Taylor v. State Farm Mutual Automobile Insurance Company, 171 So.2d 816 (La.App. 3 Cir.1965); and Horridge v. Cooney, 405 So.2d 1276 (La.App. 4 Cir.1981).
In Moreau, the plaintiff was injured in an automobile accident when he was hit by a vehicle driven by Kathleen Keller and owned by her fiancé, Gerald Ledet. The plaintiff filed suit against Ms. Keller's father, Herman Keller, and his insurance company. Mr. Keller's insurer argued that Mr. Ledet's vehicle was furnished for Ms. Keller's regular use and denied coverage. Finding that Mr. Ledet's vehicle was not furnished for the regular use of Ms. Keller, the court noted as follows:
The vehicle was an adjunct of and used in Ledet's business. In view thereof and the infrequent, spasmodic, or scanty use made of the vehicle by Kathleen Keller which required special and specific permission from the owner on each particular occasion she took the car, we do not think that Ledet was furnishing it `for the regular use of either the named insured or any relative' within the meaning of the exclusionary clause relied on by the insurer.
Moreau, 144 So.2d at 283 (emphasis added).
In Taylor, the plaintiff was injured in an automobile accident while a passenger in his own pickup truck that was being driven by his nephew, Daniel Taylor. The plaintiff filed suit against State Farm as the liability insurer of Garnie Taylor, Daniel's father. State Farm denied coverage, alleging that the truck owned by plaintiff was furnished for the regular use of Daniel. In finding that the truck was not furnished for Daniel's regular use, the court held as follows:
We find that the Ford pickup was not furnished for Daniel Taylor's regular use. The purpose of this clause is to exclude from coverage non-owned automobiles over which the insured has a general authority of use. The only evidence in the record pertaining to Daniel's *123 use of the pickup truck shows that he used the truck on the job to run errands. He occasionally operated the pickup truck for personal use but only when specifically authorized to do so by his uncle. At no time does it appear that he was given any general authorization to use the vehicle.
Taylor, 171 So.2d at 819 (citation omitted).
In Horridge, Sheila Cooney caused an automobile accident while driving a vehicle owned by her brother, Michael Cooney. Both Sheila and Michael resided with their father, Earl Cooney. The plaintiff filed suit against State Farm as Earl Cooney's insurer, and coverage was denied. Finding that the vehicle in question was furnished for Sheila's regular use, the court noted that Sheila "used the car to go back and forth to school about five days a week. She had a set of keys to the automobile, and she could use the car whenever she wanted with standing permission from Michael." Horridge, 405 So.2d at 1277.
Southern Farm Bureau argues that the 1986 Toyota pickup truck was furnished for Joshua's regular use and was, in fact, used by Joshua on a regular basis. In support of its position, Southern Farm Bureau cites Chon v. Allstate Insurance Company, 522 So.2d 690 (La.App. 5 Cir. 1988) and Brouillette v. Fireman's Fund Insurance Company, 163 So.2d 389 (La. App. 3 Cir.), writ refused, 246 La. 594, 165 So.2d 485 (1964).
In Chon, the court addressed what constitutes "furnished or available for regular use." The plaintiff was injured in an automobile accident when she was hit by a vehicle driven by Mark Weil and owned by his live-in girlfriend, Sylvia Chapeaux. The Chapeaux vehicle was not insured, so the plaintiff filed suit against Allstate as Mr. Weil's insurer. Allstate argued that the vehicle was available for Mr. Weil's regular use, and thus, denied coverage. The trial court agreed with Allstate's position and granted summary judgment in Allstate's favor. The appellate court upheld the trial court's decision, noting as follows:
After careful review we also find no coverage by Allstate extending to Weil's use of Chapeaux's Cadillac.
Allstate insured Weil pursuant to a policy of automobile liability insurance, however, said policy did not extend to an automobile not owned by Weil which was available for his regular use.
We find the evidence clear and void of reasonable factual dispute that Weil's housemate's (who was a non-relative) vehicle was used by him and available for his regular use.
Because an insurance policy is a contract under law, all rules established for its interpretation are applicable. As with other contracts, a policy of insurance becomes binding between the parties when it satisfies the requirements of a legal agreement. When the terms of such a policy are clear and unambiguous, they are subject to certain interpretation in light of the common, general and popular use of the language, without attending so much to grammatical rules.
We agree that Weil had Chapeaux's vehicle available for his regular use because it was accessable [sic], obtainable, and ready for immediate use. This is consistent with the common and general usage of the word "available".
The record clearly reflects that Chapeaux's Cadillac was accessable [sic] and obtainable evidenced by the automobile's presence in Weil's garage and Chapeaux's constant presence in his home.
Without further examination, we find the "available for regular use" exclusion is applicable to the facts of this case and *124 deny any coverage afforded Weil under his policy of insurance with Allstate.
Chon, 522 So.2d at 692 (citations omitted).
In Brouillette, the plaintiff was a fireman injured while riding on a city fire truck in the course of his duties. The policy at issue excluded coverage for injuries sustained by a named insured while occupying a vehicle "furnished for the regular use of ... the named insured." Brouillette, 163 So.2d at 391. The plaintiff's use of the fire truck was irregular, sporadic, and reasonably infrequent, depending on the number of fires. Noting the policy did not merely exclude from coverage vehicles that were "regularly used" but rather vehicles that were "furnished" for regular use, the court concluded as follows:
The words "furnished for" connote: to provide for; to supply for; to afford for; to provide what is necessary for. See Webster's New International Dictionary, 2nd ed., 1960, verbo `furnish', p. 1021.
The words "regular use" connote: used according to some established rule or principle; a use steady or uniform in course, practice, or occurrence (as contrasted to unexplained or irrational variation); use in conformity with established or prescribed rules. Id., verbo `regular', p.2099. See also 36A Words and Phrases (1962 volume) verbo `regular', p. 241, verbo `regular use', p. 301.
Applying the criteria listed above, we think that the fire truck was "furnished" for the plaintiff's use, in the sense that it was supplied, afforded, or provided specifically for this particular employee's use or occupancy whenever such was required for the purpose for which the vehicle was made available. It was furnished for the plaintiff's "regular" use in the sense that it was always furnished for the plaintiff's use in attending every fire that occurred while he was on duty, which thus was a use steady or uniform in practice, a use in accordance with established or prescribed rule or principle (as contrasted with being furnished for use only on casual or random or unpredictable or chance occasion).
Brouillette, 163 So.2d at 392.
In the instant case, Mr. Blackwell testified that he was a detective with the St. Tammany Parish Sheriff's Office. According to Mr. Blackwell, he drove a police unit to and from work but was not allowed to use the police unit to run personal errands. Mr. Blackwell and his wife, Janice, also owned a 1997 Tahoe that was primarily used by Janice to go to and from work. Joshua was not allowed to drive the Tahoe. With regard to the 1986 Toyota pickup truck, Mr. Blackwell indicated that he purchased the truck in January of 1997 as a second vehicle for his family. However, Mr. Blackwell acknowledged that when Joshua began attending Tara High School in Baton Rouge, he allowed Joshua to take the truck with him to Baton Rouge during the school week. Joshua had his own set of keys for the truck and was listed on Mr. Blackwell's insurance policy as an occasional driver. Mr. Blackwell stated that Joshua was required to ask permission to use the truck and added that on the day of the accident in question, Joshua was using the truck with his permission.
Joshua also testified about his use of the 1986 Toyota pickup truck prior to the accident of October 3, 1997. Joshua described his use of the truck as occasional. He indicated that he always had to ask permission from either his mother or father before using the truck. Joshua noted that the only time his parents would refuse him permission was when it was raining or the weather was too bad for him to travel between Baton Rouge and Covington.
According to Joshua's deposition testimony, after spending the school week at *125 his mother's house in Baton Rouge, he would drive the truck from Baton Rouge on Friday and spend the weekend with his father in Covington. While in Baton Rouge, Joshua would use the truck to occasionally run errands for his mother, and routinely used the truck on Wednesdays to bring his younger brother to soccer practice. Further, on the weekends when Joshua would stay in Baton Rouge with his mother, he would use the truck to visit with his friends, but only during the day. Joshua normally rode the bus to and from school. However, Joshua did acknowledge that he drove the truck to school on registration day. When Joshua stayed with his father in Covington on the weekends, he was allowed to use the truck to go out with his friends.
We have thoroughly reviewed the cases cited by the parties and conclude that Moreau and Taylor are factually distinguishable from the case at hand. Further, we find that Horridge actually supports Southern Farm Bureau's position that the policy in question does not provide coverage for the injuries suffered by Ms. O'Neal, as do Chon and Brouillette. The evidence reveals that Joshua had his own set of keys for the truck and that he drove the truck between Covington and Baton Rouge each week. Further, he used the truck every Wednesday to bring his younger brother to soccer practice. Thus, while Joshua apparently needed parental permission to drive the truck, the truck was clearly supplied to Joshua for these specific uses that occurred on a regular basis. Any argument to the contrary lacks merit.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court granting summary judgment in favor of Southern Farm Bureau is affirmed. All costs associated with this appeal are assessed against plaintiff-appellant, Janice S. O'Neal.
AFFIRMED.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The insurance policy at issue was attached to the memorandum in support of Southern Farm Bureau's motion for summary judgment. Generally, a legal memorandum is not one of the types of documents that can be considered under La. C.C.P. art. 966, and, consequently, attachments to a legal memorandum should not be considered by the trial court in its consideration of a motion for summary judgment. Anderson v. Allstate Insurance Company, 93-1102, p. 4 (La.App. 1 Cir. 4/8/94), 642 So.2d 208, 214 (on rehearing), writ denied, 94-2400 (La.11/29/94), 646 So.2d 404; see also Murphy v. L & L Marine Transportation, Inc., 97-33, p. 6 (La.App. 5 Cir. 5/28/97), 695 So.2d 1045, 1048. However, Rule VIII(2)(A) of the local rules of the Nineteenth Judicial District Court provides, in pertinent part, as follows: "Exceptor or mover is required to furnish the trial judge concurrently with the filing of his injunction, exception, motion, rule, or other summary proceeding a memorandum of authorities in support thereof ...." Further, Rule VIII(2)(D)(3) requires that "a copy of the document or portion thereof" that contains proof of the facts asserted shall be submitted along with a memorandum in support of a motion for summary judgment. In a case involving a similar rule, the supreme court has indicated that information contained in the attachments to a memorandum were properly considered by the trial court on a motion for summary judgment and should have been considered by the court of appeal. See Aydell v. Sterns, 98-3135 (La.2/26/99), 731 So.2d 189, 190. Therefore, we consider the Southern Farm Bureau policy in our review of this matter.