912 So.2d 78 (2005)
Alisha CURRY and Chakera Simon, Plaintiffs-Appellants
v.
Johnny R. TAYLOR, Angela Taylor and USAgencies Casualty Insurance Company, Defendants-Appellees.
No. 40,185-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 2005.
*79 Sheva M. Simms, for Appellants.
Kitchens, Benton, Kitchens & Black, by Clinton C. Black, Minden, for Appellee, USAgencies Casualty.
Hudson, Potts & Bernstein, L.L.P., by Mark J. Neal, Monroe, for Appellees, Johnny and Angela Taylor.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
CARAWAY, J.
The defendant rear-ended the bus in which plaintiffs were passengers. At the time of the accident, defendant was driving a vehicle owned by a friend. The plaintiffs sued the defendant and his automobile insurer. The trial court granted summary judgment in favor of the insurer based upon a policy exclusion for bodily injury or property damage arising out of the use of any auto, other than an insured auto, which is available for the regular use of the insured. Finding no issue of material fact regarding defendant's use of the vehicle, we affirm.

Facts
On September 11, 2003, Johnny Taylor ran into the back of a bus belonging to the City of Shreveport, Louisiana while driving a 1998 Ford Expedition owned by Michael Corbell. Corbell had given Taylor possession of the vehicle in contemplation of selling it to him. The sale had not been perfected as of the date of the accident but Taylor had used the vehicle every day while it was in his possession.
The appellee, USAgencies Casualty Insurance Company ("USAgencies"), had in full force and effect a policy of public liability automobile insurance providing coverage on Johnny Taylor and his wife, Angela Taylor, on the day of the accident.[1] Alisha Curry and Chakera Simon, passengers on the city bus, filed suit against the Taylors and USAgencies.
USAgencies defended by denying coverage to the Taylors based upon the following policy exclusion:
Coverage for Your Liability to Others does not apply to any of the following:
* * *
10. Bodily injury or property damage arising out of the ownership, maintenance or use of any auto, other than your insured auto, which is owned by, furnished or available for regular use by you, a family member or any other covered person.
Plaintiffs contended that because the vehicle was owned by Corbell at the time of the accident, the vehicle was the non-owned vehicle of Johnny Taylor for which coverage existed under that portion of the USAgencies' policy defining a "covered person" as:
You, any family member, and any additionally listed driver with respect to any auto accident while driving your insured auto or a non-owned auto.
*80 Nevertheless, the policy also defined a "non-owned auto" as "any auto, other than your insured auto, which is not owned by or furnished or available for regular use by you, a family member, or an additionally listed driver."
In October 2004, the trial court granted summary judgment in favor of Curry and Simon on the issue of Taylor's liability for the accident. Shortly thereafter, USAgencies filed a motion for summary judgment based upon the above-quoted exclusion. In support of the motion, USAgencies attached a copy of its policy, the affidavit of a representative of USAgencies certifying the policy as the one issued to the Taylors and excerpts from the depositions of Johnny Taylor and Michael Corbell.
In his deposition, Taylor admitted that at the time of the accident, Corbell's Expedition was Taylor's primary vehicle that he used on a regular basis, that it was parked at his house at night, and that no one else used the vehicle. He used it every day while it was in his possession. Taylor, who was considering purchasing the vehicle from Corbell, stated in his deposition that from the time he got the vehicle until the accident, he had the Expedition continuously. Taylor also indicated that if the accident had not occurred, he probably would have given the Expedition back to Corbell. Yet, Taylor testified that there was no specific date on which he was going to give the vehicle back. Instead, Taylor "just had a feeling" that he would do so. He stated that he thought Corbell wanted the vehicle back because Taylor was putting pressure on him to do the right thing "as far as getting the papers and everything transferred."
Corbell admitted that at some point he had given Taylor the keys to the Expedition and that Taylor had started driving it continuously. Corbell indicated in his deposition that he could not remember "exactly what happened" with respect to Taylor's purchase of the vehicle, but he was still waiting for him to purchase it at the time of the accident. Corbell admitted that he had not given anyone else permission to use the vehicle during that time, and that as far as he knew, Taylor was the only one who operated the vehicle.
In opposition to summary judgment, plaintiffs submitted portions of Taylor's deposition in which Taylor stated that the Expedition was owned by Corbell, his boxing promoter. Taylor stated that when Corbell went on a trip, he kept it. Taylor described the Expedition as Corbell's primary vehicle.
Plaintiffs also submitted part of Corbell's deposition in which he confirmed his ownership of the Expedition and that Taylor was going to buy the vehicle from him. Corbell revealed that he and Taylor were partners in a boxing venture. According to Corbell, there was an agreement for the sale of the vehicle although they had not settled upon a price. Corbell did not agree to give Taylor the vehicle as a gift.
After reviewing this evidence, the trial court granted USAgencies' motion for summary judgment citing Corbell's deposition testimony as establishing that the regular use exclusion applied. This appeal by Curry and Simon followed.

Discussion
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled *81 to judgment as a matter of law. La. C.C.P. art. 966(B). Although the burden of proof on a motion for summary judgment remains with the movant, if the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the movant's burden does not require him to negate all essential elements of the adverse party's claim, action, or defense, but to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
In an action under an insurance contract, the insured bears the burden of proving the existence of policy and coverage. The insurer, however, bears the burden of showing policy limits or exclusions. Tunstall v. Stierwald, 01-1765 (La.2/26/02), 809 So.2d 916.
An insurance policy is a contract between the parties and should be construed using ordinary contract principles. McFarland v. Southern Farm Bureau Cas. Ins. Co., 39,612 (La.App. 2d Cir.5/11/05), 902 So.2d 1207. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Id. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Id. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Id.
The jurisprudence of Louisiana has held that the purpose of the type of exclusionary clause involved here is to exclude from coverage non-owned automobiles over which the insured has "general authority of use." O'Neal v. Blackwell, 00-2014 (La.App. 1st Cir.11/14/01), 818 So.2d 118. The phrase "available for regular use" encompasses the vehicle which is accessible, obtainable and ready for immediate use. Chon v. Allstate Ins. Co., 522 So.2d 690 (La.App. 5th Cir.1988). The phrase, "furnished for regular use" means that the vehicle is provided, supplied or afforded to the individual according to some established rule or principle or used in steady or uniform course, practice or occurrence as contrasted with being furnished for use only on casual, random, unpredictable or chance occasions. Brouillette v. Fireman's Fund Ins. Co., 163 So.2d 389 (La.App. 3d Cir.1964), writ refused, 246 La. 594, 165 So.2d 485 (1964).
From the above interpretation of this policy exclusion, the use of vehicle owned by a driver's fiancé was held not to constitute regular use when the driver infrequently used the vehicle and could only do so with special and specific permission from the owner each time she took the car. Moreau v. Keller, 144 So.2d 281 (La.App. 4th Cir.1962). Likewise, the use of a truck to occasionally run errands or for personal use with specific authorization by the owner was held not to constitute regular use. Taylor v. State Farm Mut. Auto. Ins. Co., 171 So.2d 816 (La.App. 3d Cir.1965), judgment affirmed, 248 La. 246, 178 So.2d 238 (1965). In contrast, the use of a vehicle to go back and forth to school five days a week when the driver had a set of keys and could use the automobile whenever she wanted with standing permission has been held to constitute regular use. Horridge v. Cooney, 405 So.2d 1276 (La.App. 4th Cir.1981).
*82 Because USAgencies was relying on an exclusionary provision in the policy, it had the burden of showing that the exclusion applied in this case. Such burden required a showing of no genuine issue of material fact regarding whether the Expedition was "furnished or available for regular use" by Taylor. The excerpts from the depositions of Taylor and Corbell, discussed above, establish that Taylor did have regular use of the Expedition which was beyond the mere taking of a test drive at the time of the accident. Instead, Corbell had turned the keys over to Taylor who had been using the vehicle as his primary vehicle for some time prior to the accident. Most significant is Taylor's testimony that the vehicle was the primary vehicle he used on a regular basis continuously from the time that he got it from Corbell until the wreck occurred. Further, Taylor stated that there was no specific date on which he planned to give the vehicle back to Corbell, although he had a feeling he would eventually return it. It is of no moment to this inquiry that Taylor was driving the vehicle owned by Corbell in contemplation of buying it. See Leteff v. Maryland Cas. Co., 91 So.2d 123 (La.App. 1st Cir.1957) and cases cited therein. The relevant inquiry under the Louisiana jurisprudence is whether Taylor had general authority of use of the vehicle or was furnished the vehicle for use in steady, uniform course or practice.
We find the evidence before us sufficient to establish that the vehicle Taylor drove was available to him for regular use and thus fails to show the existence of any genuine issue of material fact on this issue. No credibility determinations by the trial court were necessary. Thus, USAgencies has carried its burden of showing that the exclusionary language applied to the facts of the case. Accordingly, after de novo review of the record before us, we affirm the judgment of the trial court.

Conclusion
For the reasons set forth above, the trial court's grant of summary judgment is hereby affirmed. Costs of this appeal are assessed to Curry and Simon.
AFFIRMED.
NOTES
[1] At the time of the accident, the automobile insurance coverage provided by Geico to Corbell on the subject vehicle had lapsed.