GASKINS, J.
11 Economy Premier Assurance Company (“Economy”)[1] appeals from a trial court ruling which granted summary judgment in favor of its insured, Dr. James Geisler, holding that Economy provided coverage to him under the facts of the instant case. We reverse and remand.
FACTS
On April 3, 2009, Dr. Geisler was operating a 2007 GMC Yukon XL in the parking lot of E.A. Conway Memorial Hospital when he struck a paint or push cart, which then hit Steven Gonzales. Mr. Gonzales claims injury from the incident.
The GMC Yukon was owned by Geisler Funeral Homes, a separate corporate entity, and operated by Dr. Geisler with that company’s full permission and authorization. The vehicle was insured by Progressive Security Insurance Company (“Progressive”). In March 2010, Mr. Gonzales filed suit against Dr. Geisler and Progressive.
Mr. Gonzales later amended his petition to add Economy, an insurance company that issued a personal automobile liability policy to Dr. Geisler and his wife for a 2007 BMW station wagon. In its answer, Economy denied that the Yukon driven by Dr. Geisler at thé time of the accident was an insured vehicle under its policy.
Dr. Geisler filed a motion for summary judgment and/or for declaratory judgment, asserting that the corporate-owned Yukon was covered under the Economy policy because the Yukon met the “exception” 12to the “non-owned automobile” definition. The Economy policy stated, in relevant part:
We will pay damages for bodily injury and property damage to others for which the law holds an insured responsible because of an accident which results from the ownership, maintenance or use of a covered automobile, a non-owned automobile or a trailer while being used with a covered automobile or non-owned automobile.
On the same page, the policy defined “non-owned automobile” as:
1. [A]n automobile which is not owned by, furnished to, or made available for regular use to you or any resident in your household.
EXCEPTION: An automobile owned by, furnished to, or made available for regular use to any resident in your household, is considered a non-owned automobile when used by you. [Emphasis theirs.]
Dr. Geisler and his wife are listed on the declarations page of the policy as the named insureds. Therefore, under the general definitions section of the policy, the terms “you” and “your” in the policy refer to them.
Essentially, Dr. Geisler argued that coverage was afforded to the Yukon as a non-owned automobile under the policy exclusion because — even if made available to him for his regular use — it was being used by a resident of his household, i.e., himself. In support of his motion for summary judgment, Dr. Geisler filed his own affidavit in which he stated that the Yukon was owned by Geisler Funeral Homes, that he *995 was operating it with that company’s permission, and that he had a policy of automobile liability insurance issued by Economy at the time of the accident. He also stated that at the time of the accident, he was a resident of his own | ahousehold. He also filed a list of undisputed facts and a copy of the Economy insurance policy.
The motion for summary judgment was granted on October 11, 2010. However, there is no transcript of the hearing in the record. The signed judgment of October 25, 2010, states:
Judgment is hereby entered declaring the policy of insurance issued by Economy Premier Assurance Company, Policy No. 361037466-0, provides coverage for and defense of Dr. James Geisler, Sr. for the claims being made by Plaintiff, Steven Gonzales, against him in this civil action (subject to and consistent with the other terms and provisions of that contract of insurance).
Economy appealed.
LAW
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Elliott v. Continental Casualty Company, 2006-1505 (La.2/22/07), 949 So.2d 1247; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
In an action under an insurance contract, the insured bears the burden of proving the existence of policy and coverage. The insurer, however, bears the burden of showing policy limits or exclusions. Tunstall v. Stierwald, 2001-1765 (La.2/26/02), 809 So.2d 916; Curry v. Taylor, 40,185 (La.App.2d Cir.9/21/05), 912 So.2d 78; Whitham v. Louisiana Farm Bureau Casualty Insurance Company, 45,199 (La.App.2d Cir.4/14/10), 34 So.3d 1104. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Elliott v. Continental Casualty Company, supra; Reynolds v. Select Properties, Ltd., supra; Palmer v. Martinez, 45,318 (La.App.2d Cir.7/21/10), 42 So.3d 1147, writs denied, 2010-1952, 2010-1953, 2010-1955 (La.11/5/10), 50 So.3d 804, 805.
An insurance policy is a contract between the parties and should be construed using ordinary contract principles. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Curry v. Taylor, supra; Whitham v. Louisiana Farm Bureau Casualty Insurance Company, supra.
Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Elliott v. Continental Casualty Company, supra; Reynolds v. Select Prop *996 erties, Ltd., supra; Chretien v. Thomas, 45,762 (La.App.2d Cir.12/15/10), 56 So.3d 298.
 [sThe jurisprudence of Louisiana has held that the purpose of the type of exclusionary clause involved here is to exclude from coverage non-owned automobiles over which the insured has “general authority of use.” Curry v. Taylor, supra. The phrase “available for regular use” encompasses the vehicle which is accessible, obtainable and ready for immediate use. The phrase, “furnished for regular use” means that the vehicle is provided, supplied or afforded to the individual according to some established rule or principle or used in steady or uniform course, practice or occurrence as contrasted with being furnished for use only on casual, random, unpredictable or chance occasions. Curry v. Taylor, supra; Whithorn v. Louisiana Farm Bureau Casualty Insurance Company, supra.
The so-called “regular use” exclusion for non-owned autos is a typical and common policy provision. It relieves the insurance company of the unfair burden of insuring an automobile not listed in the policy which an insured uses regularly but for which the insured pays no premium. In other words, the “regular use” exclusion prevents the insurance company from being exposed to a risk for which it is not compensated. Seymour v. Estate of Karp, 2005-1382 (La.App. 4th Cir.7/31/08), 996 So.2d 1. See also Romano v. Girlinghouse, 385 So.2d 352 (La.App. 1st Cir. 1980).
DISCUSSION
Economy argues that the Yukon was not covered under its policy because (1) it was not listed as a covered auto and (2) it was not a “non-owned automobile,” as defined in the policy, since it was furnished to or made available for Dr. Geisler’s regular use by Geisler Funeral Home. |fiUnder the policy language, Economy maintains that a vehicle regularly made available for Dr. Geisler’s use would be excluded from coverage.
Dr. Geisler argues that the exception to the definition of “non-owned automobile” applies in the instant case to afford him coverage. Specifically, the exception allows coverage when the vehicle involved in the accident is one made available for regular use to any resident in the insured’s household and is used by the insured. Dr. Geisler maintains that since he is a resident of his own household and the vehicle was made available for his regular use, there is coverage.
We disagree. As previously noted, an insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. We find no ambiguity in the Economy policy. It provides coverage for a “non-owned automobile.” However, the policy definition for a “non-owned automobile” does not include a vehicle “made available for regular use” by the insured. The reason for this is obvious — if the insurance company were to be exposed to that risk on a regular basis throughout the term of the policy, it would require an additional premium. The policy does, however, provide coverage if the insured temporarily or infrequently uses a non-owned automobile provided to a resident of the insured’s household. Such occasional exposure to risk is more acceptable to the insurer because it does not provide constant coverage for such a vehicle for the duration of the policy. Instead, the insurer briefly provides additional ■ coverage in rare situations, i.e., the child |7of the insured who is a household resident has a company car made available for his or her *997 regular use which the insured moves out of the driveway or drives to the store on a quick errand.
See and compare Seymour v. Estate of Karp, supra, in which the decedent’s husband sought coverage under his auto insurance policy for the vehicle his wife was driving at the time of her death — an auto owned by her parents and provided to her for her regular use during an almost five-month period when she lived with her parents. The husband’s policy defined “you” and “yours” as the named insured — the husband — and his spouse if she resided in the same household. The police also excluded coverage for a vehicle other than the covered auto which was “furnished or available for your regular use.” In affirming the granting of summary judgment in the insurer’s favor, the court stated:
We are not called upon to establish a bright line time period necessary to establish the “regular use” of a non-covered auto. It is sufficient that we state that the consistent, repetitive use of such an auto for a period in excess of four months is, under the facts of this case, as a matter of law, “regular use” as that term is used in the policy. The fact that such use may be for a definite, finite term as opposed to an indefinite term of no fixed duration does not mean that the use cannot be considered to be “regular.” In view of the purpose underlying such exclusion, we conclude that [the decedent’s insurer] did not undertake to insure the decedent’s regular use of this unlisted vehicle for such an extended period of time, a time period that encompassed better than one-third of the stated policy period.... [The decedent’s insurer] received no premium for the use of that vehicle. It was not as though the decedent borrowed a friend’s vehicle to run an errand, the type of random, occasional use of another’s auto for which an insured or family member might reasonably expect to be insured and for which the insurer would reasonably expect to provide coverage. [Emphasis added.]
The interpretation offered by Dr. Geis-ler of the exception to the “non-owned automobile” definition is convoluted and would lead to an absurd Rresult. The insurer has the right to limit coverage as long as those limitations do not conflict with statutory provisions or public policy. It also has the right to be compensated for the coverage it provides to its insureds.
Based upon our de novo review, we find that Dr. Geisler is not entitled to summary judgment as a matter of law on the issue of coverage under the Economy policy. Accordingly, we must reverse the trial court ruling that granted summary judgment in his favor.
CONCLUSION
The judgment of the trial court granting summary judgment in favor of Dr. Geisler is reversed, and the matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed against Dr. Geisler.
REVERSED AND REMANDED.

. In the record, Economy is sometimes referred to as “MetLife” or "Metropolitan Property and Casualty Insurance Services, Inc.”