PARRO, J.
| pThe plaintiffs appeal a judgment, which granted a motion for summary judgment in favor of the defendants and denied a cross-motion for summary judgment filed by the plaintiffs. For the reasons that follow, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Pravin Parekh and his wife, Shanta Gok-aldas, were passengers in a van driven by Nirmal Tatavalli Mittadar. Mr. Mittadar had rented the van in Houston, Texas,[1] from DTG Operations, Inc. d/b/a Dollar Rent-a-Car (DTG).[2] For reasons that are not clear from the record, Mr. Mittadar lost control of the van while he was driving westbound on 1-12 in Livingston Parish, causing the van to veer off the interstate and flip over at least twice.
Thereafter, Mr. Parekh, Ms. Gokaldas, and their five adult children filed the underlying suit, contending that Mr. Parekh and Ms. Gokaldas had suffered severe injuries, including physical and mental disability, as a result of the accident. The petition named Mr. Mittadar, DTG, and various insurance companies, including ACE Insurance Company (ACE Insurance) and ACE American Insurance Company (ACE American), as defendants.[3] At the time of the accident, ACE American provided insurance coverage as part of the rental agreement between Mr. Mittadar and DTG, pursuant to the Texas Automobile Rental Liability Policy, which provided liability coverage, personal injury coverage, and uninsured/underinsured motorist coverage (UM coverage). At some point after the petition was filed, the plaintiffs entered into settlement negotiations with Mr. Mittadar, DTG, and the ACE insurers. As a result of |3these settlement negotiations, the plaintiffs received checks totaling the $1,000,000 limits of the liability coverage portion of the ACE American *436 policy.[4] However, the parties disagreed on whether this was a full or partial settlement of the matter, as the record demonstrates that the plaintiffs only intended to release Mr. Mittadar and DTG, while reserving their rights to proceed against any other insurance Mr. Mittadar might have had. Specifically, the record indicates that the plaintiffs intended to seek payment from the UM coverage provided by the ACE American policy. On the other hand, Mr. Mittadar, DTG, and the ACE insurers apparently viewed it as a complete settlement of all claims against them.
While the parties were unable to come to an agreement over the terms of the settlement, plaintiffs’ counsel apparently negotiated the checks provided by the defendants’ counsel and disbursed the funds to his clients; however, no settlement documents were ever signed. Thereafter, defendants filed a motion to enforce settlement or, alternatively, for summary judgment on the issue of whether UM insurance coverage was available. In response, the plaintiffs filed a memorandum in opposition to the defendants’ motion and a cross-motion for summary judgment on the issue of the availability of UM insurance coverage. After a hearing, the trial court issued a written judgment denying the motion to enforce settlement.[5]
The defendants filed a writ application with this court challenging this judgment. A different panel of this court denied the writ, but also noted that the writ action did not address any other cause of action the defendants might have for the return of the funds from the settlement checks, which the plaintiffs had negotiated without executing the settlement release documents.[6]
|4The matter then returned to the trial court for consideration of the pending cross-motions for summary judgment, as well as the defendants’ request for the return of the funds from the settlement checks that had been previously negotiated by the plaintiffs. After a hearing, the trial court determined that the UM coverage provided in the ACE American policy at issue must be reduced by the full extent of the liability coverage, and that, therefore, the plaintiffs were not entitled to any additional proceeds from that policy. Accordingly, the trial court granted the motion for summary judgment in favor of the defendants and denied the motion for summary judgment filed by the plaintiffs. In addition, the trial court denied the defendants’ request that the plaintiffs be ordered to return the settlement funds that had previously been disbursed. This appeal by the plaintiffs followed.[7]
DISCUSSION
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the *437 evidence, employing the same criteria that govern the district court’s determination of whether summary judgment is appropriate. Schwehm v. Jones, 03-0109 (La.App. 1st Cir.2/23/04), 872 So.2d 1140, 1144. On a motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the moving party’s burden on the motion is to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See LSA-C.C.P. art. 966(C)(2).
The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a | amotion for summary judgment. Johnson v. Allstate Ins. Co., 95-1953 (La.App. 1st Cir.5/10/96), 673 So.2d 345, 347, writ denied, 96-1292 (La.6/28/96), 675 So.2d 1126. In seeking a declaration of coverage under an insurance policy, Louisiana law places the burden on the plaintiff to establish every fact essential to recovery and to establish that the claim falls within the policy coverage. McDonald v. American Family Life Assur. Co. of Columbus, 10-1873 (La.App. 1st Cir.7/27/11), 70 So.3d 1086, 1089. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1010.
An insurance policy is an agreement between the parties and should be construed according to the general rules of interpretation of contracts as set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577, 580. When interpreting insurance contracts, the court’s responsibility is to determine the parties’ common intent. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763; see LSA-C.C. art. 2045. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, 1169, decree amended, 95-0809 (La.4/18/96), 671 So.2d 915.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 2046. Such intent is to be determined in accordance with the general, ordinary, plain, and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. Ledbetter, 665 So.2d at 1169; see LSA-C.C. art. 2047. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Ledbetter, 665 So.2d at 1169. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to | (¡enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions on the policy obli *438 gations they contractually assume. Campbell v. Markel American Ins. Co., 00-1448 (La.App. 1st Cir.9/21/01), 822 So.2d 617, 623, writ denied, 01-2813 (La.1/4/02), 805 So.2d 204.
By its express terms, the policy at issue provides for the payment of damages that a “covered person” is legally entitled to recover from the owner or operator of an “uninsured motor vehicle” because of bodily injury that results from a motor vehicle accident occurring during the effective period of the rental agreement assuming the renter has not rejected UM coverage in writing.[8] Where a policy of insurance contains a definition of any word or phrase, that definition is controlling. Cangelosi v. Allstate Ins. Co., 96-0159 (La.App. 1st Cir.9/27/96), 680 So.2d 1358, 1362, writ denied, 96-2586 (La.12/13/96), 692 So.2d 375.
In establishing the limits of its UM coverage, the policy provides, in pertinent part, the following definitions in Section III, which concerns uninsured/underin-sured motorist coverage:
A. COVERAGE
[[Image here]]
2. “Covered person” as used in this Section means:
The renter, authorized driver, or any other person occupying the rental vehicle.
[[Image here]]
4. “Uninsured motor vehicle” means a land motor vehicle or trailer of any type:
a. To which no liability bond or policy applies at the time of the accident.
b. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:
(1) the renter, authorized driver, or any family member of either;
(2) a vehicle which the renter, authorized driver, or any family member of either are occupying; or
(3) the rental vehicle;
|7c. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:
(1) denies coverage; or
(2) is or becomes insolvent.
d. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit of liability either:
(1) Is not enough to pay the full amount the “covered person” is legally entitled to recover as damages; or
(2) has been reduced by payment of claims to an amount which is not enough to pay the full amount the “covered person” is legally entitled to recover as damages.
However, “uninsured motor vehicle” does not include any vehicle or equipment:
a. Owned by or furnished or available for the regular use of the renter, authorized driver, or any family member of either.
[[Image here]]
With respect to UM coverage, it is clear that Mr. Parekh and Ms. Gokaldas were considered “covered person[s]” pursuant to the terms of the policy, as they were both occupying the rental vehicle at the time of *439 the accident that caused their injuries. Furthermore, the rental vehicle initially appears to meet the definition of an “uninsured motor vehicle” found in the policy, because it qualified as an underinsured motor vehicle, as the limits of its liability policy were not sufficient to pay the full amount Mr. Parekh and Ms. Gokaldas were legally entitled to recover as damages.[9] However, the definition of “uninsured motor vehicle” also excludes any vehicle “furnished or available for the regular use of the renter.”
Pursuant to Louisiana jurisprudence, regarding the above exclusion, the phrase “available for regular use” encompasses a vehicle that is accessible, obtainable, and ready for immediate use. Gonzales v. Geisler. 46,501 (La.App. 2nd Cir.9/21/11), 72 So.3d 992, 996. In addition, the phrase “furnished for regular use” means that the vehicle is provided, supplied, or afforded to the individual according to some established rule or principle or used in steady or uniform course, practice, or occurrence, as contrasted with being furnished for use only on casual, random, unpredictable, or |schance occasions. Id. In this case, the vehicle was clearly made available for the “regular use of the renter,” Mr. Mittadar, for the term of the rental agreement, and it was accessible, obtainable, and ready for his immediate use during that time. It is further undisputed that the accident occurred during the term of the rental agreement. Therefore, we conclude that the rental vehicle does not qualify as an “uninsured motor vehicle” under the terms of the policy. Accordingly, no UM coverage is available under the policy at issue.[10]
We note that this result would be the same under Texas law as well.[11] In interpreting the exclusion above, Texas courts have determined that this exclusion operated to prevent the injured occupants of a vehicle from collecting the liability benefits and UM benefits under a single policy. Farmers Texas County Mut. Ins. Co. v. Griffin, 868 S.W.2d 861, 866 (Tex.App-Dallas, 1993), writ denied (1994); see also Scarborough v. Employers Casualty Co., 820 S.W.2d 32, 34 (Tex.App.-Fort Worth, 1991), writ denied (1993); Rosales v. State Farm Mutual Automobile Insurance Co., 835 S.W.2d 804, 805-06 (Tex.App.-Austin, 1992), writ denied (1993). In these cases, the Texas courts relied, in part, on language from the Texas Supreme Court in Stracener v. United Services Auto. Ass’n, 777 S.W.2d 378, 384 (1989), in which the court stated that “[b]y purchasing [UM] coverage along with basic liability coverage, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person’s own family and guests from the negligence of others.” The Texas courts have interpreted the phrase “negligence of others” to refer to the negligence of those *440 in other automobiles, which is clearly not applicable to this matter, as this was a single vehicle accident involving only the negligence of Mr. Mittadar. Specifically, the Texas courts noted that the insured had purchased UM coverage to |flprotect himself and his guests from negligent, financially irresponsible drivers in other automobiles. Farmers Texas County Mut. Ins. Co., 868 S.W.2d at 868. Allowing a guest passenger to recover both liability and UM benefits from the same insured’s policy converts the UM coverage into a second layer of liability insurance, which was not contemplated in the policy costs. See Id. Accordingly, under Texas law, no UM coverage would be available under the policy at issue.
CONCLUSION
For the foregoing reasons, the trial court judgment granting the motion for summary judgment in favor of the defendants, Nirmal Tatavalli Mittadar, DTG Operations, Inc. d/b/a Dollar Rent-a-Car, ACE Insurance Company, and ACE American Insurance Company, and denying the cross-motion for summary judgment filed by the plaintiffs is affirmed.[12] All costs of this appeal are assessed to the plaintiffs.
RULE TO SHOW CAUSE DENIED; JUDGMENT AFFIRMED.

. At the time of the accident, Mr. Parekh, Ms. Gokaldas, and Mr. Mittadar were all residents of Houston, Texas.

. DTG appears in the original petition and the plaintiffs’ brief as DTS Operations, Inc. d/b/a Dollar Rent-a-Car; however, the record indicates that the appropriate name of the party is DTG Operations, Inc. d/b/a Dollar Rent-a-Car. Therefore, we will use that name in this opinion.

.Plaintiffs also sued GMAC Insurance Company Online, Inc., Home State County Mutual Insurance Company, and Phoenix Insurance Company. None of these companies is involved in the instant appeal. It appears that all claims against Mr. Mittadar, Home State County Mutual Insurance Company, and Phoenix Insurance Company have been settled, and those parties have been dismissed from the proceedings. It does not appear that GMAC Insurance Company was ever served with the petition in this matter.

. The checks were drawn on an account from DTG, which was labeled as the Liability Claims Account; however, the policy at issue was provided by ACE American.

. The trial court did not consider or rule on the motions for summary judgment. Initially, the trial court issued written reasons for judgment and a judgment dated July 2, 2009, indicating that it had denied the defendants' motion for summary judgment; however, the trial court subsequently issued an amended judgment, along with amended reasons for judgment dated November 4, 2009, indicating that the only issue before the court had been the motion to enforce settlement.

. Parekh v. Mittadar, 09-2213 (La.App. 1st Cir.3/16/10), writ denied, 10-0828 (La.6/18/10), 38 So.3d 325.

. The defendants have not appealed any portion of the trial court's judgment, including the denial of their request for the return of the settlement funds that had previously been disbursed.

. Mr. Mittadar, the renter in this case, had not rejected UM coverage.

. The fact that the plaintiffs suffered damages far in excess of the liability limits of the ACE American policy does not appear to be disputed by the parties.

. Because we have determined that the vehicle driven by Mr. Mittadar does not qualify as an uninsured motor vehicle pursuant to the terms of the policy, no UM coverage has been triggered under the policy. Accordingly, we need not address the applicability of the reduction clause to the facts of this case.

.The defendants had argued in the trial court that Texas law was applicable to the interpretation of the policy at issue. The trial court applied Louisiana law, and the defendants did not appeal any part of the trial court’s judgment. However, in their brief to this court, the defendants have again suggested that Texas law is applicable to the interpretation of the policy. Because the issue was not appealed, it is not truly before us; however, because Texas jurisprudence directly addresses the clause at issue, we will briefly discuss the issue.

. This court issued a "Rule to Show Cause” on August 25, 2011, advising the parties that the judgment on appeal appeared to be a partial final judgment without the proper designation of finality required by LSA-C.C.P. art. 1915(B). However, the trial court signed an amended judgment on September 26, 2011, with a designation of the judgment as final, and that judgment has been filed into the record. Therefore, the Rule to Show Cause is denied as moot.