Judgment rendered April 28, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,850-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| JENNIFER DAVIS AND BRANDON DAVIS | Plaintiff-Appellants |
| versus | |
| DRANELL WHITAKER, USAA CASUALTY INSURANCE COMPANY AND LOUISIANA FARM BUREAU INSURANCE COMPANY | Defendant-Appellees |

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 617,178

Honorable Ramon Lafitte, Judge

* * * * *

| | |
|---|---|
| RICHIE, RICHIE & OBERLE, LLP By: Patrick W. Woolbert | Counsel for Appellants |
| SEABAUGH, JOFFRION, SEPULVADO & VICTORY, LLC By: Alan T. Seabaugh Michael C. Melerine | Counsel for Appellees |

* * * * *

Before MOORE, PITMAN, and THOMPSON, JJ.

**MOORE, C.J.**

A school bus driver suffered injuries in a vehicular collision while driving on her daily bus route. She and her husband sued the driver and liability insurer of the other vehicle; they also sued their personal vehicle uninsured/underinsured motorist ("UM") carrier, Louisiana Farm Bureau Insurance Company ("Farm Bureau"). The defendant driver's liability insurer settled; however, Farm Bureau contested the UM claim and moved for summary judgment based on a policy exclusion of UM coverage when the automobile is "owned by or furnished or available for the regular use of the named insured" but is "not described on the declarations." Following a hearing, the court granted Farm Bureau's motion and rendered judgment dismissing the plaintiffs' claim. The plaintiffs filed this appeal. For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

## FACTS

Jennifer Davis was employed as a school bus driver for the Caddo Parish School Board. On October 31, 2018, while she was driving the bus east on Overton Brooks Road approaching its intersection with Ellerbe Road, a vehicle driven by Dranell Whitaker made a wide right turn out of the driveway of the Holy Angels Residential Facility onto Overton Brooks. Whitaker's vehicle crossed the centerline and collided with the bus driven by Ms. Davis. Ms. Davis suffered bodily injuries and medical expenses as a result of the collision. Her husband, Brandon Davis, suffered loss of consortium damages.

Ms. Davis and her husband filed suit against Ms. Whitaker and her liability insurer, USAA Casualty Ins. Co., and they also named Farm

Bureau, as Davis's personal insurer and UM carrier. The vehicle described on the declarations is a 2011 Chevrolet Traverse SUV. The suit against USAA was subsequently settled.

Farm Bureau moved to dismiss the petition by motion for summary judgment on the basis of an exclusion under UM bodily injury coverage ("Coverage U") in the policy that reads (with *emphasis supplied*):

**Exclusions**

This policy does not apply under Coverage U:

\*\*\*

(b) to any automobile or trailer owned by or *furnished or available for the regular use of the named insured* or a resident of the named insured's household *if that automobile is not described on the Declarations.*

Ms. Davis stated in her deposition that she was a daily school bus driver, and a bus was furnished to her by the school board to take students to and from school daily during the school year; she was not allowed to use the school bus for personal matters. On the day of the accident, she was driving a different school bus from her regular school bus, which was being repaired. Neither the regularly assigned school bus nor the one being used on the day of the accident was named in the declarations of the policy.

Based on this evidence, the trial court concluded that the facts of this case fit the "regular use" policy exclusion and case law interpreting it: the school bus was furnished for "regular use" to Ms. Davis during the school year, and it was not described on the Farm Bureau policy declarations page; therefore, the regular use exclusion in the policy applied, and the claim for bodily injury damages from the accident was excluded from UM coverage. The court dismissed the petition.

The plaintiffs appealed, urging only that the trial court erred by finding that the regular use exclusion applies to the case.[1] After the appeal had lodged, the Louisiana Supreme Court rendered its decision in *Higgins v. Louisiana Farm Bur. Cas. Ins. Co.*, 2020-01094 (La. 3/24/21), 2021 WL 1115393, wherein the court held that the identical "regular use" exclusion in a Farm Bureau policy impermissibly derogated from the requirements of the Louisiana uninsured motorist statute, La. R.S. 22:1295. The court reversed the summary judgment dismissing the petition and remanded the case to the trial court for further proceedings.

In light of this case's similarity to *Higgins*, the plaintiffs submitted a supplemental brief urging this court to reverse the summary judgment and remand the case to the trial court for further proceedings.

Farm Bureau notified this court that it would not submit a supplemental brief in light of the *Higgins* decision.

For the reasons that follow, we reverse the summary judgment in favor of Farm Bureau, and remand the case to the trial court for further proceedings.

**DISCUSSION**

Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Elliott v. Continental Cas. Co.*, 2006-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180, *Gonzales v. Geisler*, 46,501 (La. App. 2 Cir. 9/21/11), 72 So. 3d 992. A motion for summary judgment will be granted if

---

[1] They also contended that the school bus is not an "automobile," as defined in the policy, but in light of our resolution of the principal issue, we pretermit any consideration of this argument.

the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

In an action under an insurance contract, the insured bears the burden of proving the existence of policy and coverage. The insurer, however, bears the burden of showing policy limits or exclusions. *Tunstall v. Stierwald*, 2001-1765 (La. 2/26/02), 809 So. 2d 916; *Gonzales*, *supra*. Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. *Elliott, supra*; *Gonzales, supra*.

In this case, the facts are not disputed. Ms. Davis contracted with Farm Bureau for a personal automobile insurance policy for which she is an insured under the liability and UM coverage provisions. The sole legal question is whether Farm Bureau is entitled to a summary judgment on the issue of UM coverage under the language of the policy and the UM statute.

Louisiana has a strong public policy that favors UM coverage and a liberal construction of the UM statute. *Higgins, supra*; *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So. 2d 191. The UM statute, La. R.S. 22:1295, requires UM coverage on automobile insurance policies issued in this state in limits not less than the bodily injury liability provided by the policy; however, UM coverage is not required when an insured named in the policy makes a written rejection of UM coverage or selects limits lower than the liability limits of the policy. *Id.*; *Taylor v. Rowell*, 98-2865 (La. 5/18/99), 736 So. 2d 812. UM coverage is an implied amendment to any automobile liability policy made for the protection of the insured thereunder and will be read into the policy unless validly rejected. *Higgins, supra; Duncan v.*

4

*U.S.A.A. Ins Co.*, 06-0363 (La. 11/29/06), 950 So. 2d 544. Because the UM statute is liberally construed, *statutory exceptions* to coverage must be interpreted strictly. *Id.* (Emphasis supplied).

In *Higgins, supra*, the plaintiff, Charles Higgins, was injured while operating a truck owned by his employer, AT&T. Higgins was given a vehicle by AT&T to use on a daily basis, and was driving that vehicle at the time of the accident. Though Higgins was not guaranteed the same vehicle every day, he was usually assigned the same vehicle. The other driver was underinsured, and because AT&T did not carry UM coverage on the truck, Higgins filed a suit against his personal automobile UM insurer, Farm Bureau. Farm Bureau moved for summary judgment pursuant to the "regular use" exclusion in the UM portion of the policy.

The policy issued by Farm Bureau to Higgins also contained the "regular use" exclusion for "any automobile owned or furnished for regular use." Hence, Higgins would not have liability coverage for any vehicle he owned or that was furnished to him for regular use but not described on the declarations. Farm Bureau argued that since Higgins was not qualified for liability coverage, he was not entitled to UM, and summary judgment was proper under *Magnon, supra. Magnon* has been cited for the proposition that "a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy." *Id. at* 196.

Higgins opposed the motion arguing that the "regular use" exclusion conflicted with the requirements of the UM statute, specifically La. R.S. 22:1295(1)(e), which states (with *emphasis added*):

> The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including the resulting death of an insured, *while occupying a motor **vehicle owned by the insured** if*

5

*such motor vehicle is not described in the policy under which a claim is made*, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles.
*Higgins, supra* at p.11.

Higgins argued that the statute permits UM coverage to be limited only in a situation where the insured occupies a vehicle that he or she owns but did not declare the vehicle on his or her insurance policy. The trial court agreed and denied Farm Bureau's motion for summary judgment. Farm Bureau appealed.

A five-judge panel from the First Circuit reversed (4-1), holding that La. R.S. 22:1295 did not mandate UM coverage for the accident because of the regular use exclusion in Higgins's policy, citing *Green ex rel. Peterson v. Johnson*, 14-0292, p.7 (La. 10/15/14), 149 So. 3d 766, 772, citing *Magnon v. Collins*, *supra* at 6, 739 So. 2d 191, 196.

The Supreme Court granted Higgins's writ application, 20-01094 (La. 11/18/20), 304 So. 3d 72.

The court observed that the parties' arguments regarding the interpretation and application of the UM statute "turn[ed] heavily" on its analysis in *Green* and *Magnon*. It concluded, however, that "*Green* merely clarified that *Magnon* is irrelevant in cases where the insurance policy at issue contains UM provisions which expressly provide coverage to the insured." *Magnon* has been erroneously applied in *contractual* UM coverage cases for its "holding" that "a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy." This statement was taken out of the context of the *Magnon* court's discussion of whether the plaintiff was entitled to *statutory*

6

UM coverage, inasmuch as there were *no contractual* provisions for UM coverage in the CGL policy at issue. The court held that *statutory* UM coverage was not available because the plaintiff did not qualify as a liability insured under the special provision for "non-owned or hired autos." Therefore, it would not statutorily amend the policy to provide such coverage.

Although some lower courts have erroneously cited the *Magnon* case in automobile liability policies with *contractual* UM coverage provisions, the court concluded that *Magnon* is inapposite to the question whether UM coverage is required in Higgins's case because the Farm Bureau policy contained contractual UM coverage provisions (albeit with an exclusion for vehicle's furnished for regular use).

Unlike *Magnon*, where the CGL policy had no contractual UM coverage provisions, *Green* involved an automobile liability insurance policy issued by Allstate that contained contractual UM coverage provisions and no "furnished for regular use exclusion." The plaintiff, Asanti Green, was the mother of two children whose father, Dave Peterson, was killed in an accident while riding a motorcycle that he co-owned with another person, Benjamin Gibson. Gibson had a policy of automobile liability insurance that included UM coverage provisions with Allstate. The motorcycle was not listed on the policy declarations, but the policy gave a 60-day time period to declare a newly acquired vehicle to the insurance company. That time period had not expired when the accident occurred.

Allstate argued Peterson did not have UM coverage under the policy because the definitions of "insured auto" and "insured person" set forth in the liability portion of the policy were not met, citing the *Magnon* holding.

The plaintiff argued, however, that the motorcycle met the definition of an "insured auto" supplied in the UM coverage section of the policy, and he was an insured under the UM section definition. The trial and appellate courts found no UM coverage in line with the *Magnon* quote that "a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy."

The Supreme Court granted writs and reversed, articulating a two-step analysis to determine the existence of UM coverage under an automobile insurance policy:

(1) The automobile insurance policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the policy;

(2) If no UM coverage is contractually provided under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated.

*Green*, *supra* 774.

Construing the UM provisions of the policy, the court held that the motorcycle qualified as an "insured auto" for purposes of UM coverage because it met the definition of motor vehicle ("a land motor vehicle") in the UM coverage section. As such, Peterson qualified under the UM policy provisions as an "insured person" which was defined in the policy to include a "person while in, on, getting into or out of an 'insured auto' with [the policyholder's] express or implied permission." *Id*. at 775.

The court rejected application of *Magnon's* holding in cases where the policy contains UM coverage provisions. *Magnon* concerned the issue of whether statutory UM coverage was mandated by the UM statute where there were no contractual UM provisions in the policy. It held that Peterson

8

was an insured under the contractual UM coverage provisions in the policy irrespective of the liability portion of the policy.

Because the court's "step 1" analysis resulted in a finding that the Allstate policy provided contractual UM coverage, the "step 2" analysis—a determination whether statutory UM coverage was mandated—was not undertaken. The court reversed the summary judgment in favor of Allstate and remanded for further proceedings.

*Green* was distinguished from *Magnon* because the former had contractual UM coverage provisions while the CGL policy in *Magnon* did not; *Higgins* is distinguished from *Green* because the contractual UM coverage provisions of the Farm Bureau policy include a UM contractual exclusion for vehicles furnished for "regular use" but not listed on the policy declarations.

The Farm Bureau policy in *Higgins* expressly provided UM coverage to Higgins as an insured; however, those provisions had an "in-this-instance" (the "regular use" exclusion) exception to UM coverage. The court turned to "step 2" of the Green analysis to determine if statutory UM coverage was mandated.

Farm Bureau urged the court to follow *Magnon's* holding that a person who does not qualify as a liability insured under the policy is not entitled to statutory UM coverage. The court rejected *Magnon's* application to the facts because Mr. Higgins was obviously the insured under the personal automobile policy, unlike the plaintiff in *Magnon*, who alleged status as an insured under his employer's CGL policy. Since Mr. Higgins was the named insured on his personal automobile policy, the court concluded that any vehicle-based exclusion could not be used to artificially

9

limit the definition of the "insured" for purposes of UM coverage in a personal automobile policy where that coverage has not been declined, but is expressly provided. *Higgins*, *supra* at 8. Applying the *Magnon* holding would allow insurers to write vehicle-based exclusions into the liability section of personal automobile polices, and, in turn, limit UM coverage for the insured. This would be inconsistent with the UM statute and the Supreme Court's jurisprudence interpreting the UM statute as requiring that UM coverage follow the person, not the vehicle. *Howell v. Balboa Ins. Co.*, 564 So. 2d 298 (La. 1990). In *Howell, supra*, the court said:

> UM coverage attaches to the person of the insured, not the vehicle, and * * * any provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes La. R.S. 22:1406(D). In other words, any person who enjoys the status of insured under a Louisiana motor vehicle policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist.

La. R.S. 22:1295 contains the fundamental requirement that every automobile liability insurance policy also include UM coverage of persons insured under the policy unless such coverage is expressly rejected. UM coverage is an implied amendment to any automobile liability policy made "for the purpose of persons insured thereunder" and will be read into the policy unless validly rejected. *Id.*

Although UM coverage cannot be qualified by a requirement of relationship with an insured vehicle, the UM statute contains one limited exception to this general rule, specifically, La. R.S. 22:1295(1)(e), which provides a statutory exclusion of UM coverage of an insured "while occupying a motor *vehicle owned by the insured* if such motor vehicle is not described in the policy under which a claim is made, or is not a newly

10

acquired or replacement motor vehicle covered under the terms of the policy." (Emphasis supplied.) The *Higgins* court said the purpose of this exception is to keep vehicle owners from carrying UM coverage for only one vehicle while owning two or more such that they could obtain the benefit of UM coverage no matter which vehicle they occupied.

Since the UM statute is liberally construed and statutory exceptions to coverage must be interpreted strictly, the court found that the statutory exclusion "unambiguously applies to 'vehicle[s] owned by the insured,'" but the Farm Bureau exclusion expands the categories of vehicles excluded from UM coverage beyond what the UM statute allows. *Higgins, supra* at 12.

Accordingly, the court reversed the summary judgment in favor of Farm Bureau and remanded the matter to the trial court for further proceedings.

Turning now to the case currently before the court on appeal, we conclude that the case is factually analogous to *Higgins*, *supra*, and the UM policy provisions are substantially, if not exactly, identical. We note that the court in *Higgins* stated that the liability portion of the policy contained a similar regular use exclusion to the UM coverage exclusion. In this case, the additional "regular use" exclusion that applies to the policy including liability coverage is found in the policy section entitled "Use of Other Automobiles" following the general definitions.

It is undisputed that Ms. Davis was a daily school bus driver and a school bus was furnished to her by the school board to take students to and from school daily during the school year. On the day of the accident, Ms. Davis was driving a different school bus from her regular school bus, which was being repaired. Neither the regularly assigned school bus nor the school

11

bus used on the day of the accident was named in the declarations of the policy. There is no question that Ms. Davis is an insured in her own automobile insurance policy from Farm Bureau.

The *Higgins* decision expressly overruled prior jurisprudence that had upheld the "regular use" exclusion in similar situations, such as *Gray v. American Nat'l Prop. & Cas. Cos.*, 2007-415 (La. App. 3 Cir. 10/3/07), 966 So. 2d 1237 (summary judgment in favor of Farm Bureau denying plaintiff school bus driver UM Coverage under the regular use exclusion) and *Peyton v. Bseis*, 96-0309 (La. App. 4 Cir. 8/21/96) 680 So. 2d 81, (police officer denied UM coverage under regular use exclusion).

Following the *Higgins*' analysis summarized above, we conclude that the Farm Bureau "regular use" exclusion in this case impermissibly derogates from La. R.S. 22:1295 by expanding the statutory exclusion for "owned" automobiles not described on the declarations to also exclude automobiles furnished for regular use. We therefore conclude that statutory UM coverage is provided to the plaintiffs under the policy.

## CONCLUSION

For the reasons stated above, the judgment of the trial court in favor of the defendant, Louisiana Farm Bureau Casualty Insurance Company, is reversed. We remand the case to the trial court for further proceedings. Costs of this appeal are assessed to Farm Bureau.

**REVERSED AND REMANDED.**