BROWN, Chief Judge.
_JjThis consolidated appeal is from two lower court judgments in the same case.[1]
*481 The parties are plaintiff, Longleaf Investments, LLC (“Longleaf’), defendant, Cypress Black Bayou Recreation & Water Conservation District (“the District”), and third party defendant, Lexington Insurance Company (“Lexington”). The first judgment, which is the subject of appeal no. 49,508-CA, is a grant of summary judgment in favor of Lexington which dismissed the District’s third party claim against the insurer based upon the trial court’s conclusion that there was neither coverage under a general liability policy issued by Lexington nor a duty to defend the District against Longleafs claim for damages.
The second judgment, which is the subject of appeal no. 49,711-CA, is one rendered on the merits of Longleafs petition for damages in which the trial court ruled that: (1) the boundary agreement executed by Longleaf and the District is valid and enforceable; (2) the flowage easement created by the 187.5 foot servitude does not burden Longleafs property; and (3) the District does not owe damages to Longleaf. The District has appealed from both judgments. Longleaf has not appealed from the trial court’s rejection of its claim for damages. Regarding the appeal from the first judgment, the issue of insurance coverage is rendered moot, although whether Lexington owes the District a defense is still an issue to be addressed by this Court. As 12to the District’s appeal from the second judgment, Longleaf has conceded that the flowage easement does in fact apply to its property; the District asks this Court to reverse that part of the trial court’s judgment which holds otherwise for clarification purposes. The issue to be addressed by this Court is the trial court’s finding that the boundary agreement was valid and enforceable.
In appeal no. 49,508-CA, we affirm the trial court’s grant of summary judgment in favor of third party defendant, Lexington Insurance Company, for the reasons stated by the trial court, i.e., that Lexington did not owe a defense to its insured, the District. In appeal no. 49,711-CA, we reverse that portion of the trial court’s judgment which held that the property owned by plaintiff, Longleaf Investments, LLC, was free of the flowage easement created by the 187.5 foot servitude reserved by the District at the time of the creation of Cypress Lake, and, based upon our finding that defendant, Cypress Black Bayou Recreation <& Water District, did not have the power or authority to enter into an extrajudicial boundary agreement with Long-leaf, we reverse that portion of the trial court’s judgment which found and declared that the August 24, 2011, boundary agreement is valid and enforceable.

Facts and Procedural History

Plaintiff, Longleaf Investments, LLC, owns property on Cypress Lake, which is owned and regulated by defendant, Cypress Black Bayou Recreation & Water Conservation District, which is a political subdivision created and empowered by the state in La. R.S. 88:2601 et seq.
|sThe Cypress-Black Bayou Watershed Project was undertaken by the District in 1966, in collaboration with the USDA Soil Conservation Service and the State of Louisiana. Land and flowage easement requirements provided by federal law were required to be maintained by the District. These requirements applying to the land *482 and the flowage easement were set forth in official regulations and policies adopted by the District. Additionally, the deed by which the District acquired its property, filed on August 5, 1969, in the Conveyance Records of Bossier Parish (vol. 447, p. 345), makes specific reference to a Right of Way of Proposed Cypress Black Bayou Reservoir, which was also recorded in the Conveyance records (vol. 389, pp. 452-3). This lake plat shows the 179.6 MSL contour line, which is the top of irrigation and municipal water supply; the fee line is the greater of two feet vertically and 100 feet horizontally above the 179.6 contour line; and the flowage easement is at 187.5 MSL. Therefore, anyone who acquired neighboring property after August 5, 1969, did so subject to the fee line and flowage easement.
Longleaf purchased a tract which borders the District’s land in January of 2006. The deed refers to the 1969 deed and to an attached survey prepared by JOPA Engineers and dated January 17, 1977. The boundary between Longleaf s and the District’s properties remained the fee line. Longleaf began planning to develop a subdivision on its property around 2010. In December of 2010, Longleaf sought and obtained a permit from the District for the construction of a sea wall which was to be located |4at the 179.6 contour line on Cypress Reservoir and was not to exceed 22 inches in height and 21 inches in backfill.
Thereafter, the parties entered into a boundary agreement dated August 24, 2011, and recorded on September 6, 2011. This agreement made reference to the “original acquisition boundary contour'on Cypress Black Bayou Reservoir which has changed due to erosion.” Longleaf began construction of the sea wall on the contour line in March of 2011. The District sent Longleaf a “Cease and Desist” letter demanding that all activities related to the construction of the sea wall be halted. The District further wrote that the property within the retaining wall was below the fee line and that Longleaf was trying to claim the District’s land as its own.
Longleaf filed a petition for damages against the District on May 17, 2012, seeking injunctive relief prohibiting the District from enforcing the terms of the cease and desist letter so that plaintiff could continue with its development, together with a declaratory judgment that the boundary agreement and its construction permit for the sea wall are valid, as well as damages arising out of the delay caused by the issuance of the cease and desist letter. The District filed an opposition, answer and reconventional demand. A hearing on the request for preliminary injunction was held on June 21 and 25, 2012. The trial court granted the requested injunctive relief and rendered judgment on November 9, 2012, enjoining the District from interfering with the construction of the sea wall. The District appealed from this judgment, which was affirmed by this Court in Longleaf Investments, LLC, supra.
|ROn April 18, 2013, Longleaf amended its petition to seek damages it claimed were caused by the cease and desist letter written by the District. Specifically, Longleaf alleged that:
Due to the issuance of the Cease and Desist Letter described above and the stoppage of construction as a result, there was damage done to the sea wall in its unfinished condition during the delay between the issuance of the Cease and Desist Letter and the time the preliminary injunction was issued resulting in additional cost to Longleaf for repair of the sea wall and bringing it back to the condition it was in at the time of the issuance of the Cease and Desist Letter in the approximate amount of [$154,551].
*483 Thereafter, the District sent a letter to Lexington requesting indemnity/coverage and a defense under its general liability policy with the insurer. On June 24, 2018, Lexington sent a letter denying coverage under the policy.
The District filed a third party demand against the insurer. Lexington filed an exception of no cause of action, which was denied by the trial court. The District filed an amended third party demand against Lexington. In response, the insurer filed a motion for summary judgment which was heard and granted by the trial court. The trial court found that there was neither coverage nor a duty to defend owed by the insurer. This judgment was designated as a partial final judgment, La. C.C.P. art. 1915, and the District appealed from the summary judgment ruling.
Trial on the merits of Longleafs petition was held on March 18, 2014. Prior to trial, the District dropped its opposition to the location of the sea wall and consented to the issuance of a permanent injunction regarding the sea wall and its present location. The trial court found that the boundary agreement was valid and enforceable and that á flowage easement asserted |fiby the District did not affect Longleafs property. Longleafs claim for damages was denied. The District has appealed from this judgment. The parties have come to an agreement regarding the flowage easement and its applicability to Longleafs tract; we will reverse that part of the trial court’s judgment and render judgment accordingly. Therefore, the issues before this Court are whether Lexington had the duty to defend the District against Long-leafs claim for damages and whether the boundary agreement is enforceable.

Discussion

The District v. Lexington-Duty to Defend

The District urges that the trial court erred in granting summary judgment in favor of Lexington based upon its finding that the insurer did not have the duty to defend the District against Longleafs claim for damages.[2] Conversely, Lexington contends that the trial court’s summary, judgment ruling should be upheld by this Court.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Elliott v. Continental Casualty Co., 06-1505 (La.02/22/07), 949 So.2d 1247; Suite v. Lafayette City-Parish Consolidated Government, 04-1459 (La.04/12/05), 907 So.2d 37; Reynolds v. Select Properties, Ltd., 93-1480 (La.04/11/94), 634 So.2d 1180; Lodwick, L.L.C. v. Chevron U.S.A., Inc., 48,312 (La.App.2d Cir.10/02/13), 126 So.3d 544, writ denied, 13-2898 (La.02/28/14), 134 So.3d 1176.
An insurer’s duty to defend suits against its insured is broader than the scope of the duty to provide coverage. Suite, supra; Lodwick, supra. The duty to defend is determined by the allegations of the injured plaintiffs petition, with the insurer being obligated to' furnish a defense unless the petition unambiguously excludes coverage. This is known as the “eight corners rule,” whereby an insurer must look to the “four corners” of the plaintiffs petition and the “four corners” of its policy to determine whether it has a duty to defend. American Home Assur *484 ance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Lodwick, supra.
In this analysis, the allegations of the petition are liberally interpreted to determine whether they set forth grounds that bring the claims within the scope of the insurer’s duty to defend. American Home Assurance Co., supra; Lodwick, supra. If, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Elliott, supra; Lodwick, supra.
The application of the eight corners rule in this case calls for the Court to compare the “four corners” of Longleafs petition against the “four corners” of Lexington’s insurance policy and determine whether the claims, liberally interpreted and taken as true, fall within the scope of Lexington’s duty to defend. If there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the | amotion under which coverage should be afforded, summary judgment is proper, and there will be no duty to defend.
The original and first supplemental and amending petitions filed by Longleaf allege that, “in spite of the Boundary Agreement and the Permit ... [the District] apparently directed its counsel to forward to Long-leaf a cease and desist letter,” and “the cease and desist letter is a breach of the Boundary Agreement.” Plaintiff further alleged that, “Due to the issuance of the [letter] and the stoppage of construction as a result, there was damage done to the sea wall in its unfinished condition ...” and that “[d]ue to the breach by [the District] of the Boundary Agreement ... Longleaf is entitled to ... damages caused by the delay resulting from the cease and desist letter.”
Plaintiffs petition sets forth a claim for breach of contract. Furthermore, Long-leaf has alleged that this breach, the issuance of the cease and desist letter by the District, was intentional. Lexington’s policy defines an “occurrence” as an “accident, including continuous or repeated exposure to substantially the same general harmful conditions.” We find no error in the trial court’s conclusion that the District’s cease and desist letter was neither an accident nor an occurrence under the clear terms of the Lexington policy or that the issuance of the letter was an intentional act specifically excluded from coverage.
The District has argued that, although Longleaf has consistently claimed that the damage to its sea wall resulted from the stoppage of construction which followed defendant’s cease and desist letter, what factually caused the damage and constitutes an “occurrence” in this case is the continuous and repeated exposure of the sea wall to the lake water and natural wave action. This assertion is without merit. Even if we were to read Longleafs petitions as including such a claim (which is not in fact contained therein, but is asserted for the first time in the District’s third party claim seeking coverage and a defense from Lexington), there is no coverage under the Lexington policy because natural wave action is an act of God, not an accident or occurrence. See Caldwell v. Let the Good Times Roll Festival, 30,800 (La.App.2d Cir.08/25/98), 717 So.2d 1263, writ denied, 98-2489 (La.11/25/98), 729 So.2d 566.

Longleaf v. The District-Validity of Boundary Agreement

In the trial court and on appeal, the District urged three theories in support of its position that the boundary agreement is invalid. The trial court rejected defendant’s “failure to follow proper procedure” *485 and “lack of authority” arguments before making factual findings in support of its conclusion that the boundary agreement was not null and void or subject to rescission because of error or fraud. However, we find that the trial court’s judgment is legally erroneous because the District did not in fact have the authority to enter into an extrajudicial boundary agreement with plaintiff. For this reason, the boundary agreement is invalid and will be set aside.
Louisiana Civil Code article 789 provides for the judicial or extrajudicial fixing of a boundary between contiguous lands. Article 789 explains that a boundary is fixed extrajudicially when the parties, by written agreement, determine the line of separation between their lands with or | ^without reference to markers on the ground. Comment (c) to art. 789 provides that the effect of a boundary agreement is to convey ownership to each party up to the designated line. Article 789, however, is inapplicable in this case.
Louisiana Revised Statute 41:1131 provides that:
Whenever there arises a controversy with respect to the boundary line between lands belonging to the state and contiguous and abutting lands belonging to another person, or boundary lines which have never been definitely ascertained, defined or fixed, the state and the party may proceed to the ascertainment, determination and fixing of the boundary by mutual consent, as set forth in this Chapter. (Emphasis added).
Louisiana Revised Statute 41:1132 provides in pertinent part that:
Whenever a settlement is amicably arrived at between the owner of the contiguous and abutting land, and the register of the state land office and approved by the attorney general, the governor may enter into a contract with the owner in keeping with the proces verbal of the agreement of settlement ... (Emphasis added).
The District is a political subdivision of the State of Louisiana, created as a waterworks district under Article XIV, Section 14 of the Louisiana Constitution, with its stated purpose being the development of the wealth and natural resources of the district by the conservation of water for agricultural, municipal, recreational, commercial, industrial and sanitary purposes. La. R.S. 38:2603. The legislature further granted to the District all powers necessary for it to carry out the objects for which it was created. Specifically:
It shall have the power to sue and be sued and to buy and sell all types of property, both real and personal, and to expropriate in accordance with law any properties which may be necessary for the accomplishment of its purposes as herein contemplated. It shall have the authority to negotiate and execute contracts, to acquire by purchase, gift, expropriation or otherwise every type and specie of \ ^property and servi-tudes, rights of way and flowage rights necessary to its purpose ... (Emphasis added).
These are very particularized delegations of authority. As such, they are limited to the tasks specifically listed by the legislature. Had the legislature wished to allow the District exemption from the requirements of La. R.S. 41:1132, which provides that the authority to enter into boundary agreements is vested in the register of the state land office, with said agreement being approved by the attorney general before it is signed by the governor, it could have done so by including a specific provision to that effect in La. R.S. 38:2603.
Because we are invalidating the boundary agreement based upon the District’s *486 lack of authority to negotiate and sign an agreement setting the boundary between the state-owned land it has been entrusted ■with administering and maintaining and the property owned by Longleaf, we do not reach the other issues raised by the District in support of this assignment of error. However, we will reverse that portion of the trial court’s judgment which declares that the flowage easement does not apply to the Longleaf tract and render judgment accordingly.

Conclusion

For the reasons set forth above, we AFFIRM the trial court’s January 28, 2014, judgment in favor of third party defendant, Lexington Insurance Company, granting its motion for summary judgment.
We REVERSE that part of the trial court’s June 28, 2014, judgment which declares valid and enforceable the boundary agreement between plaintiff, Longleaf Investments, LLC, and defendant, Cypress Black Bayou | ^Recreation and Water Conservation District, and hereby RENDER JUDGMENT declaring that agreement to be invalid and without legal effect. By agreement of the parties, we REVERSE that part of the trial court’s June 23, 2014, judgment declaring that Longleafs property is free of the flowage easement which was created by the 187.5 foot servitude reserved by the District at the time of the creation of Cypress Lake. We hereby RENDER JUDGMENT declaring that Longleafs property is subject to the flow-age easement which was created by the 187.5 foot servitude reserved by the District at the creation of Cypress Lake.
AFFIRMED IN PART, REVERSED IN PART, and RENDERED.

. There was a previous appeal in this case which dealt with Longleaf’s construction of a sea wall and the District’s issuance of cease and desist letter to Longleaf; in that appeal, this Court affirmed the trial court’s judgment which granted the relief requested by Long- *481 leaf, which was an injunction prohibiting the District from interfering with the construction of the sea wall. See Longleaf Investments, LLC v. Cypress Black Bayou Recreation & Water Conservation District, 48,180 (La.App.2d Cir.06/26/13), 118 So.3d 505. The District has dropped its objections to the location of the sea wall, which will remain in its current location, undisturbed.

. As noted above, although summary judgment was also granted on the trial court’s finding that there was no insurance coverage, this issue is moot based on the fact that Long-leaf did not appeal from the trial court’s judgment denying its claim for damages.